May it please the Court, my name is David Barari. I represent the appellant Cody Belgarde. He asks that this Court vacate his convictions, or in the alternative, vacate $3,500 of the $10,000 restitution ordered by the district court. As to the restitution issue, the district court was clearly erroneous in its calculation of the victim's losses. The government introduced insufficient evidence to quantify the $3,500 of the $10,000 that had been provided by the three affiliated tribes through their grants department to the victim for the burial of the deceased in this case. There's no question, is there, that the tribe made that payment? That's correct. There's no question that the tribe made that payment. So what are we missing specifically? Are we missing some sort of testimonial evidence that it occurred, or receipts, or what would have been sufficient here? Exactly, those sorts of things. Is there, where's the requirement that there be receipts? The Court was specific in the purposes for the restitution, identifying, purchasing groceries for feeding mourners, purchasing blankets for donating, purchase cultural items, other items needed for wake and funeral. Why is that not sufficient detail for the use of the $3,500? Right. That was the third party's intent. However, that is not a quantification of the victim's losses. This is discussed in Frazier, particularly in that second part of Frazier, talking about the home that was burned down, that the insurance company's payment of insurance, its out-of-pocket expenses, are not an accurate measure of the losses of the victim. And it was citing section 3664F1B. Frazier said, thus, it is not appropriate to determine the amount of restitution based on Ameren's out-of-pocket costs. That's exactly what we have here. We have the third party, or in the third step, quantifying what's required in the second step, the victim's losses. That's the gap here. Would it be enough just if we knew for sure the wake had occurred, or do we need to know more specifically about expenses? We need to know both. Here, the record doesn't reflect that a wake occurred. We know a funeral occurred, but we don't know that a wake occurred or that any of this money was spent for the purposes intended by the tribe. In Iancloud, though, aren't we a little looser with this standard in not requiring the sort of evidence that you're suggesting we need here? The difference there is it was the actual victim who was testifying about an anticipated one-year follow-up, where it was an incurred expense intended to be incurred. They gave a $3,000 to a $10,000 range, and they allowed that. Here in our case, we have the money provided, whatever happened, happened, and we are now three years after the funeral, three years after any wake that may have occurred. The amounts were determinable at the sentencing hearing. However, there was no evidence provided, and the objection was properly raised by the defendant. The government was aware of its obligation, fulfilled its obligation up to the $6,500 figure, which had an itemization of costs. It was signed by the victim. That was sufficient, and the objection from the defendant was withdrawn. There's no question what the purpose of the donation was. That's the incorrect perspective. We don't look at this from the third party's perspective, as the government argued. We look at this from the victim's perspective, and maybe that's the most helpful point of the Frazier case law on this issue. We need to look at what the victim actually incurred, what the expenses actually were. Well, Frazier doesn't require that, does it? It does. The first part of Frazier is talking about the family's losses. So who's the victim, in your view? In our view, it is the deceased's mother, and that's by the statute. Right. That's 3663J1. Correct. And the funeral-related expenses qualify. Yes. And the tribe records, to me, are a prima facie showing, but no expense details. The mother testified. The victim testified. She did not. The victim did not testify. She testified at trial. She was not called at sentencing. Correct. She did not testify about the weight. Who pays for that void? Who suffers from that, from failing to get the mother back to clarify this at sentencing? Well, it's the government's error for not producing the evidence, and she is not out. She was given the money by the tribe, apparently. That doesn't matter. Well, I think what your question is asking, who is out, implies that the third party becomes a victim because it provided money to the victim. That's not what Frazier says. And to return to Judge Smith's . . . It isn't close to this, in my view. I mean, it's a different address to the different problem. And that's what I'm trying to clarify with Frazier, with Judge Smith's question. In Frazier, the first part of Frazier, where they were talking about the BIA and the Red Cross, they were talking about the step three issue. Because the amount of the victim's losses, so the house burned down and it's personal property that's lost. In Frazier, the defendant agreed to the amount of that loss. And so in the first part of Frazier, what they are talking about is the third party and their intent in a double payment that potentially was ordered in the restitution. That needed to be clarified. In the second part of Frazier, we're talking about the building that had burned down, which was owned by the SWA Corporation. And they were talking about the insurance payment made by Amerind, an insurance company, to compensate for the loss of the building. And this court said that third party's payment doesn't quantify the victim's losses in step two. There's a distinction there. And it was citing that 3664F1B. But if the tribe's records are sufficient for a prima facie case, doesn't that shift the burden for you to refute it? No. It's an inadequate evidence of the victim's losses from the victim's perspective. And your best case for that? Frazier. As far as I know, as far as we can find, the Second Circuit is the only one that's even addressed this. I think this Court has addressed this in the three-step analysis of Frazier. First, determine the victim. Not head on. I think these are not new legal issues, according to the analysis in Frazier. Because of the distinction between the two categories of victims discussed in Frazier. We ask that the Court vacate the $3,500 and direct the Court to enter the new order for $6,500. And that the record be closed. Because this issue was raised. The government had its bite at the apple. This Court follows the traditional rule that the government doesn't get a second bite at the apple to establish a sentencing issue. On remand from this Court. If there are no further questions, I'd like to reserve the remainder of my time. Thank you. Is he in?  Good morning. May it please the Court. My name is Megan Healy on behalf of the United States. The government's position regarding the restitution is that the record developed at the District Court. The application from the mother to the tribe for funeral and wake funds. The tribe's documentation of the amount and purpose of the funds paid meets the 3664E requirements to show by a preponderance sufficient specificity as the amount and purpose of the restitution request to support the exercise of the District Court's jurisdiction. Turning first to the argument regarding the second step outlined in Frazier. It is our position that the District Court did not skip the second step. That step is you put together the victim's losses and here the loss was established that there was a need to provide culturally appropriate services to lay a victim to rest. The tribe identified those needs. And I want to point out the context here that this is a determination by the tribe, who, yes, is a third-party claimant here, but it's a determination by the tribe that this amount allocated is to lay one of its own members to rest in a culturally appropriate way. And that's different from Frazier. In Frazier we're dealing with an insurance company that is effectively a third-party who is not really associated with the crime and the house burning down that you're dealing with in Frazier. This is, the context is important. And I think that the case that is closest or provides perhaps the most insight is the Iron Cloud case. And in many ways this case is much clearer than Iron Cloud. There you had an estimate as to expected future expenses. And that's not what we have here. Here we have a sum certain, an imminent need, and a documented purpose for the funds. The sum certain just being what the tribe paid? Yes, Your Honor. With no, and I guess I haven't studied the records. I thought it was clear they did not nail down that it was expended for restitution qualifying. I'm going to take that in two parts, Your Honor. First, the restitution qualifying purpose. It's the purpose identified by the tribe is a restitution qualifying purpose. And the defense isn't arguing otherwise. You mean the burial expenses? Yes. The culturally appropriate wake and service. And the cultural stuff doesn't have to necessarily be burial. No, that's correct, Your Honor. Just like in Iron Cloud it could be. How do we sort it out from these records, how much was cultural and how much was burial? The funeral expenses that were well-documented in the record, the $6,500, we're not arguing about that. That was the burial expense. The $3,500 was to provide for, as the tribe said, the feeding of mourners, star quilts, moccasins and attire. So as you just pointed out, you know, the $6,500 was well-documented. The burden's on the government here. Why isn't the other, why isn't the remainder well-documented? Well, Your Honor, what we did in this case is we looked at what was in the record originally, and it's in the record at 173-1. It's just a letter from the tribe asking for $10,000 to bury its member in a culturally appropriate way because that's what it had fronted to the funeral home and to the family. The defense in their sentencing memo, which is at docket 177 at page 19, said that what they actually raised is, the objection was, well, how do we know how the tribe got this $10,000? And so we went back. How they what? How did the tribe get to the $10,000 amount? Like, where did that number come from? So in response to the objection that was made, we went back to the tribe and said, provide us more information. And so what they did is they provided the funeral expenses and they provided the e-mail that Judge Smith quoted from explaining what the purpose is for. And the tribe had the director of the grants department who provided the e-mail. The government had that person at sentencing ready to testify. But the defense agreed that the e-mail sufficed for the purposes. As to the – Is there an issue on whether this argument was preserved then or not? I didn't take that to be the case. But what I'm hearing you say is the argument slightly – you're understanding it to be different on appeal than it was at sentencing. No, that's not quite right, Your Honor. Before sentencing, the argument was, how did the tribe get to the $10,000? And that's what we responded to at sentencing. But at sentencing, the defense, we believe, did preserve the – well, now we want more information on the breakdown of the $3,500. And they did – so we believe they did preserve that and we didn't argue to the contrary in our briefing. And so, Judge Loken, I want to turn back to your question about why – why didn't we produce the victim to testify at sentencing? Well, it's clear from our case law that mere estimates cannot establish actual losses.  That's correct, Your Honor. And that – what do we have more than particularly on the cultural aspect? What do we have more – anything more than an estimate? Your Honor, this case is simply different on that regard. Also, it gets out from under Bagley because it's different. Let me explain how it's different. Here, we don't just have a rough estimate. Here you have the tribe itself laying its own member to rest. It carries the amount that it – Did the tribe operate or organize the wake? And if so, why couldn't they provide more documentation? The tribe didn't – there's nothing in the record suggesting the tribe did. And my understanding is that the family did. I guess maybe I take issue with the tribe. I get what you're saying from a certain perspective, but the tribe did not lay its own member to rest here. The family did. Yes, but the tribe fronted the money to the family to enable the family to do so in a time of incredible loss. But my point was that it's different here in that the tribe, more so than an insurance company, has a much better idea as to what is going to be necessary to lay one of its own members to rest in a culturally appropriate way. Well, I mean, the tribe has more information on how to conduct a culturally appropriate burial than an insurance company. But the facts of the other cases, certainly the insurance company knows what it takes to replace a home. I don't take the difference. I don't understand what the difference is. We just think that the context here – It's different, but I don't know that the difference matters under the statute. I think that it brings it closer and within the circuit precedent of Iron Cloud. If anything, the tribe might be more willing to overspend than an insurance company and inflate and provide a windfall to the victim. That's an argument that was made in the reply brief, and that we don't have – We don't have any evidence that allows us to – Make that determination. Yeah, that's the problem. I want to circle back, Judge Wilkin, to the question about the victim here. At the time, the point was raised in the reply brief that there's this long period of time and it could have been determinable. First, I want to note that the government assured the district court that it had complied with all of its obligations under the CVRA, and that included sending out notices for restitution. Now, we did not receive one from the mother in this case, which makes sense because she had been compensated by the tribe. It would have been disingenuous for her to seek something for which she had already been compensated. But also, under the CVRA, victims retain the right to participate in criminal proceedings or not. And here, based on the trial testimony, this is a very difficult thing for the mother to do. Does that relieve the government of its obligation and burden of proof? No, Your Honor. But what I want to do is provide the context to why we believe this fell under iron cloud and why we took the steps that we did, in that it was very difficult. This is a prolonged case. And by the time we got to sentencing, the record shows that the mother didn't submit a statement. She didn't participate in the sentencing. She had stepped away. You're talking too fast. I'm not looking down. I apologize. But the mother, by the time of sentencing, did not submit a statement. She did not participate. And based on iron cloud, the government determined that it had sufficient documentation to substantiate the restitution request as necessary under 3664E. And the prosecutor specifically invoked iron cloud at sentencing as a basis for the restitution request. That's on page 72. And because we were operating, as we believed, under circuit precedent, if this Court does disagree with our take on restitution, we do ask that it be remanded for further proceedings to enable us to build a more fulsome record because we were relying explicitly on circuit precedent. On what? On circuit precedent in iron cloud. Beyond that, the government respectfully asks the Court. I mean, it's not the only precedent. If you didn't pick the most controlling one or just one that was relevant but not controlling, why does that matter? We believe it was both. We tried to do the right thing. Well, okay. Maybe it didn't work. We believed it was both relevant and controlling, and we acted in accordance. Now, your reliance on iron cloud or iron cloud itself? Iron cloud itself, that we believed that was both relevant and controlling authority, and we acted in accordance with it. If it's not controlling, then, oh, my gosh, we've got to go back to Bagley and the other things that put more of a burden on us. If the Court disagrees, then we would ask that it be remanded for further proceedings to act in accordance with that. That, I think, is what is likely to be the right answer. And we're saying that if that's the conclusion the Court reaches, that's the remedy of their request. I see that my time is up. And on that, we ask respectfully that the Court affirm the convictions. Thank you very much. Thank you, Your Honors. I think your questions got to the heart of the matter, that the amounts weren't quantified for the victims' losses and may have resulted in a windfall. The government simply provided estimates from the tribes about what these were. So what's the remedy? The remedy should be to remand either for instruction to enter the amount of $6,500 and to close the record. This isn't new law. You think there should be nothing for the other costs? For only the $6,500. No, but you're saying anything beyond the $6,500, you're saying that the tribe can get nothing because it wasn't specific enough? The government obtained the information from the third party, the tribe. That was all the information that was there. The burden was on the government to produce evidence. They didn't do so. Essentially, they're asking to reopen the door so the victim can come in to testify. That isn't allowed. Don't you have to admit that some of the itemized categories of expenses would qualify as burial, lunch for the mourners? They did not itemize it when the objection was properly made. They didn't request 90 days to extend. It's your demand that they don't get a second chance and we get $3,500, period. I think that's a huge stretch. There's also the finality of the sentencing. The objection was made. The government didn't produce the evidence. It should be final because it was their error not to produce it after it was objected to. That's your position. They did not request. We'll find out whether that's a sound position or not. They did not request the 90-day extension under the statute, under the Claussen case here. Discussed that. They made their presentation. They made their presentation. You say it was a little more than a third inadequate. Correct. But you admit that some of the inadequacies were simply of less documentation than you would like to see. You want to see what the mourners actually ate. Whether they paid too much for a hamburger. It's not what I would like to see. It's what the law demands. What you say the law demands. It demands. A lot of restitution cases and parties have always made definitive statement about what the restitution statutes, complex as they are, require us to hold. What specifically forecloses a remand in the second bite at the apple?  Sure. There's the finality conclusion, and this Court follows the traditional rule. The finality of sentencing. And this Court follows the traditional rule that the government doesn't get a second bite at the apple when there is a proper objection made, the government is on notice and doesn't produce the evidence at trial or at the sentencing hearing. And then the decision is made in error and it's insufficient. The government doesn't get a second bite. The second bite to, is that when they have a failure of proof? Is that when that rule?  Now, their argument is that this is a legal issue, that their understanding of the law at sentencing, or their argument might be that this Court is changing the law on remand. If that were true, would the government get a second bite at the apple? If this were a new issue of law, then the finality rule is slightly different, because in that situation, if it's this change in the law, then that second bite at the apple rule does not apply. I agree with that. However, this — What if it's an unresolved issue? This is resolved. As Your Honor — Yeah. As Your Honor recognizes, there's many restitution cases, and this is a simple three-step process. This is not — this is not like some of our guidelines cases where the government knew what it had to show and didn't show it. And we say, you know, one strike is all you get. That's the — those are the cases you're invoking, right? Yes. They also — I think the difference here is — Any other broader category? The calculation of the amount of benefits and the payment by a third party, by statute under 18 U.S.C. 3664 F1b, says that we can't consider the third party's payments to quantify the amount of the victim's losses. If this is by statute, it isn't new law. The government might be interpreting things differently or misinterpreting ironclad, but that's right there in the statute. And that's what Frazier is saying on 907 through 908. What was that? We understand your time's up. Oh, thank you, Your Honor. I didn't hear that.